# UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

|  |  |
|---|---|
| In re:<br><br>ROBERT BRUCE ELLEGOOD,<br>JUDITH RASH ELLEGOOD,<br>    *Debtors*. | Case No. 06-50579-SCS<br><br>Chapter 13 |

## MEMORANDUM OPINION

This matter came for hearing on February 9, 2007, upon the Objection to Confirmation of the Chapter 13 plan of the Debtors, Robert Bruce Ellegood and Judith Rash Ellegood ("Debtors"), filed by HSBC Auto Finance f.k.a. Household Automotive Finance Corporation ("HSBC"). The Court took the matter under advisement. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a). Upon consideration of the pleadings and the joint stipulation filed by the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Debtors filed, by counsel, their voluntary petition under Chapter 13 of the United States Bankruptcy Code on October 10, 2006, and timely filed their Chapter 13 plan on October 25, 2006 ("Plan"). HSBC filed an Objection to Confirmation of the Plan on December 20, 2006 ("Objection"). The Objection lists two grounds upon which it urges denial of confirmation of the Plan. First, HSBC contends that the Plan provisions treat the security interest in the 2005 Chrysler Town and Country motor vehicle ("Automobile") in

a manner inconsistent with the requirements of 11 U.S.C. § 1325. Second, HSBC argues that the interest rate that the Plan proposes to pay upon its claim is improper in light of the requirements of *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465 (2004).[1] More specifically, HSBC objects to the proposed Plan treatment of its claim where the Debtors seek confirmation of a Chapter 13 plan which would, in effect, "cram-down" the secured portion of HSBC's claim to the present value of the Automobile and treat the remainder of the claim of HSBC as an unsecured claim. This "bifurcation" of HSBC's claim, it asserts, is barred by certain provisions of Section 1325 of the Bankruptcy Code enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),which HSBC advocates requires the treatment of the entirety of its claim as secured in order for the Debtors to achieve confirmation of a Chapter 13 plan. There apparently being no material dispute between the Debtors and HSBC as to any factual predicates necessary for the Court to resolve the remaining portion of the Objection, the Debtors and HSBC have stipulated to the following facts:

1. The Debtors filed a petition for relief under Chapter 13 on October 10, 2006.

---

[1] The Objection of HSBC as it pertains to the interest rate was made with regard to the interest to be paid on the secured portion of the HSBC claim post-confirmation. In open court on February 9, 2007, counsel for HSBC advised the Court that it was abandoning its Objection as it pertains to the interest rate provided for its claim in the Plan. Accordingly, HSBC has withdrawn the portion of its Objection concerning the interest rate to be paid on the secured portion of its claim as determined by the Court. HSBC continues to assert, where the Plan of the Debtors seeks to "bifurcate" the claim of HSBC into a secured portion of $16,000.00 and an unsecured portion of the remainder of the debt owed HSBC utilizing the provisions of Sections 1325 and 506 of the Bankruptcy Code, that the current Section 1325 of the Bankruptcy Code prohibits this proposed plan treatment.

2. The Debtors filed a Chapter 13 plan on October 25, 2006.
3. HSBC filed the Objection on December 20, 2006.
4. HSBC is a secured creditor of the Debtors, secured by a lien on a 2005 Chrysler Town and Country, VIN 2C4GP44R55R120271 (the "vehicle").
5. The payoff due HSBC at the time of filing was $24,127.00.
6. The debt owed HSBC was incurred on June 23, 2006, which is within one year preceding the date of the filing of the petition in bankruptcy.
7. The debt owed HSBC was incurred as a refinance of an existing debt owed to another creditor and the funds HSBC loaned to Debtors were not used to purchase the vehicle.
8. The plan states the value of the vehicle to be $16,000.00 and proposes to pay that sum as secured together with interest at the rate of 9%.
9. The contract rate of interest is 10.49%.

Joint Stipulation of Facts, Robert Bruce and Judith Rash Ellegood, Case Number 06-50579-SCS, filed Jan. 22, 2007, Docket Entry 21.

The critical stipulation for purposes of resolution of the Objection is found in paragraph seven. It is undisputed that the security interest of HSBC in the Automobile was not incurred to secure purchase money; rather, the debt incurred by the Debtors was for the refinance of an existing debt of the Debtors owed to a creditor other than HSBC. However, in spite of the admission that the security interest of HSBC is not of a purchase money variety, HSBC asserts that recent amendments to Section 1325 of the Bankruptcy Code enacted by BAPCPA operate to bar a bifurcation of its debt by the Debtors. Accordingly, resolution of the Objection requires this Court to review these amended provisions of Section 1325.

## CONCLUSIONS OF LAW

I. The "Hanging Paragraph"

Prior to the amendment of Section 1325 by BAPCPA, debtors could utilize Section 506 of the Bankruptcy Code to "bifurcate" the claim of a creditor with a security interest in the debtor's motor vehicle, reducing the amount of the creditor's secured claim to the replacement value of the vehicle at the time of confirmation of the Chapter 13 plan and treating any remaining portion of the lender's claim as unsecured. *In re Johnson*, 337 B.R. 269, 270 (Bankr. M.D.N.C. 2006). The drafters of BAPCPA sought to limit the circumstances where Section 506 of the Bankruptcy Code could be utilized to "cram down" a secured creditor and bifurcate its claim into a secured and unsecured portion. BAPCPA amended existing Section 1325 of the Bankruptcy Code by the insertion of an unnumbered paragraph providing as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [*sic*] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325 (2006).² The meager legislative history that accompanied this passage of BAPCPA provides little explanation as to the "hanging paragraph."³

---

² This provision is called a 'hanging paragraph' because it was appended to section 306 of BAPCPA without specifying a particular subsection of Code § 1325(a) to which the amendment applied. *See In re Green*, Case No. 06-31615, ___B.R.___, 2007 WL 96677, at *1 fn.1 (Bankr. N.D.N.Y. Jan. 12, 2007) (citing Henry E. Hildebrand, III, *Getting Noticed: The New Notice Requirements of Section 342*, 13 AM. BANKR. INST. L. REV. 533, 538 n.27 (2005); Timothy D. Moratzka, *The Hanging Paragraph and Cramdown: 11 U.S.C. §§ 1325(a) and 506 after BAPCPA*, 25-4 AM. BANKR. INST. J., May 2006, at 18 (stating that "[i]n the uninformed rush by Congress to prevent bankruptcy abuse, § 1325(a) of the Bankruptcy Code was amended by BAPCPA to include a hanging paragraph at the end of § 1325(a)(9)")). Some have referred to this section as the "starred paragraph" but "this usage . . . makes it more difficult to electronically search opinions that use this designation because electronic services such as Lexis and Westlaw use the asterisk . . . as a universal search character." *In re Trejos*, 352 B.R. 249, 253 n.5 (Bankr. D. Nev. 2006).

³ The brief discussion of the "hanging paragraph" amendment to Section 1325 in the Report of the House of Representatives provided as follows:

> Protections for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing. In addition, the bill terminates the automatic stay with respect to personal property if the debtor does not timely reaffirm the underlying obligation or redeem the property. Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition. Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

The provisions of BAPCPA have drawn the ire of a number of reviewing courts since its enactment.[4] One judge has succinctly stated as to the "hanging paragraph" that "[i]t is undisputed that the hanging paragraph is poorly drafted." *In re Trejos*, 352 B.R. 249, 261 (Bankr. D. Nev. 2006). However, as the same judge has aptly ruled, "Rough roads can lead to the same destination as superhighways. . . ." *Id*. This Court must review the provisions of the "hanging paragraph" to conclude whether its provisions support the Objection of HSBC and prohibit the treatment of the HSBC claim as provided in the plan.

II. Is a Claim Described in the "Hanging Paragraph" a Secured Claim?

A significant division among bankruptcy courts quickly arose as to whether the "hanging paragraph" actually operated to prevent bifurcation of a motor vehicle-secured claim by its negation of the operation of Section 506 on the types of claims enumerated in the "hanging paragraph." "The majority holds that a claim of the type described in the hanging paragraph . . . is deemed secured in the full amount of the claim. Courts reaching this conclusion reason that nonbankruptcy law determines whether a claim is secured while bankruptcy law determines the value of a secured claim." *In re Green*, 348 B.R. 601, 603 (Bankr. M.D. Ga. 2006).[5] Thus, the negation of the operation of Section 506 by the "hanging

---

H.R. Rep. No. 109-31(I), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th Cong. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.

[4] For a summary of the various critiques of the "hanging paragraph," see *In re Trejos*, 352 B.R. 249, 254, n.7 (Bankr. D. Nev. 2006).

[5] For a compelling analysis of the statutory language of the "hanging paragraph," see Judge Markell's discussion in *In re Trejos*, 352 B.R. 249, 259-64 (Bankr. D. Nev. 2006). *See also In re Brooks*, 344 B.R. 417, 419-22 (Bankr. E.D.N.C. 2006); *In re Scruggs*, 342 B.R. 571, 573-75 (Bankr. E.D. Ark. 2006); *In re Shaw*, 341 B.R. 543, 545-

paragraph" does not operate to render an applicable creditor claim bifurcated into secured and unsecured portions.

Other courts have disagreed, finding the negation of the operation of Section 506 by the "hanging paragraph" for the therein described claims has the effect, perhaps unintended, of preventing such claims from being secured and therefore must be treated as fully unsecured. *See, e.g.*, *In re Carver*, 338 B.R. 521, 526 (Bankr. S.D. Ga. 2006).[6]

As the Debtors do not assert the provisions of the "hanging paragraph" operate to render the claim of HSBC fully unsecured, resolution of the Objection does not require the Court to reach this question. However, to the extent this Court has an obligation to review the Plan for its compliance with Section 1325 of the Bankruptcy Code beyond the four corners of the specific objections of a creditor, this Court believes the majority view provides

---

46 (Bankr. M.D.N.C. 2006); *In re DeSardi*, 340 B.R. 790, 811-13 (Bankr. S.D. Tex. 2006); *In re Montoya*, 341 B.R. 41, 43-44 (Bankr. D. Utah 2006); *In re Fleming*, 339 B.R. 716, 722 (Bankr. E.D. Mo. 2006); and *In re Johnson*, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006).

[6] Collier on Bankruptcy has addressed the minority view as well:

> It is possible that [the "hanging paragraph"] was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims should be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because *the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims*, it does not [sic] to carry out such intent.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] (Alan N. Resnick & Henry J. Sommer, eds., 15th rev. ed. 2006) (emphasis added).

the most cogent interpretation of the provisions of the "hanging paragraph." *See In re Evans*, 344 B.R. 440, 450 (Bankr. W.D. Va. 2004) (citing *United States v. Easley*, 216 B.R. 543, 544 n.1 (W.D. Va. 1997); *In re Bowles*, 48 B.R. 502, 505 (Bankr. E.D. Va. 1985)) ("A bankruptcy court has an independent duty, irrespective of the lack of any objection to confirmation by a creditor or other party in interest to satisfy itself that a proposed chapter 13 plan does meet the confirmation requirements set forth in the statute."). In particular, the exhaustive analysis of Judge Markell in *In re Trejos* is persuasive to this Court that the negation of the operation of Section 506 of the Bankruptcy Code on claims described in the "hanging paragraph" does not have the legal effect of rendering such claims unsecured. Accordingly, this Court must conclude whether the application of the provisions of the "hanging paragraph" under the stipulated facts of the instant case prohibits the treatment of the HSBC claim proposed in the Plan.

### III. The Two Factual Scenarios of the "Hanging Paragraph"

The provisions of the "hanging paragraph" set forth two factual scenarios where a described claim is not subject to the provisions of Section 506 of the Bankruptcy Code and therefore may not be bifurcated into a secured and an unsecured portion based upon the value of the debtor's vehicle. Judge Funk has well summarized the first of these:

> First, if a creditor (1) has a purchase money security interest securing a debt, (2) the collateral for which consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, and (3) the debt was incurred within the 910-day period preceding the date of the filing of the petition, then section 506 is inapplicable and the entire amount of the creditor's claim is secured.

*In re Parish*, Case Number 05-BK-15702-JAF, 2006 WL 1679710, at *1 (Bankr. M.D. Fla. Mar. 10, 2006) (slip opinion).

It is undisputed that this first scenario is not implicated here. HSBC does not possess a purchase money security interest in the Automobile and does not assert that this first scenario of the "hanging paragraph" operates to prohibit the proposed treatment of the Debtors' Plan. Instead, because the security interest in the Automobile here was taken by HSBC within one year of filing, HSBC argues the provision of the "hanging paragraph" which states "or if the collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing" provides a second, alternate scenario, one which does not require the creditor to hold a purchase money security interest in the collateral, and thus operates to prohibit the proposed treatment of the HSBC claim provided in the Plan. In other words, HSBC argues this secondary provision, by not re-asserting the term "purchase money security interest," provides that a creditor whose debt was incurred within a year preceding filing may be secured by "any other thing of value" without regard to whether the debt was incurred as purchase money or otherwise. Thus, resolution of the Objection is dependent upon a determination of whether the "hanging paragraph" requires a creditor whose debt was incurred within one year of filing to possess a purchase money security interest in its collateral. If such a requirement is imposed by the "hanging paragraph," the Objection must be overruled as it is undisputed HSBC does not

have a purchase money security interest in the Automobile.[7] To the contrary, if a purchase money security interest is not required, the Objection of HSBC must be sustained, as it is stipulated the security interest of HSBC in the Automobile was taken within one year of the Debtors' filing.

IV. Principles of Statutory Interpretation in the Fourth Circuit

This Court recently had occasion to examine the principles of statutory interpretation espoused by the Fourth Circuit Court of Appeals in *In re Silvus*, 329 B.R. 193 (Bankr. E.D. Va. 2005). Just as this Court proceeded in the *Silvus* case, our analysis here must necessarily begin with the statutory language of the "hanging paragraph." It is a well-settled principle that "'unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language.'" *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)). Two exceptions exist regarding the application of a statute's plain language. In interpreting Section 365 of the Bankruptcy Code, the Fourth Circuit Court of Appeals has stated:

> [A] court is obliged to apply the Plain Meaning Rule unless the party contending otherwise can *demonstrate* that the result would be contrary to that intended by Congress. Requiring a demonstration that the plain meaning of a statute is at odds with the intentions of its drafters is a more stringent mandate than requiring a showing that the statute's literal application is unreasonable in light of bankruptcy policy.

---

[7] The Debtors and HSBC have stipulated that the transaction between them was "a refinance of an existing debt owed to another creditor and the funds HSBC loaned to Debtors were not used to purchase the vehicle."

*RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra*), 361 F.3d 257, 269 (4th Cir. 2004) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)). The Fourth Circuit drew on the earlier ruling of the United States Supreme Court in the *Ron Pair Enterprises* case, in which the Court held that "[t]he plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters.*, 489 U.S. at 242.

The second exception to the Plain Meaning Rule is triggered "'when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.'" *In re Sunterra*, 361 F.3d at 265 (quoting *Hillman*, 263 F.3d at 342). As to both of these exceptions, the instances in which either should apply should be "'exceptionally rare.'" *Id.* (quoting *Hillman*, 263 F.3d at 342).

In *Sunterra*, the Fourth Circuit considered, *inter alia*, the proper interpretation of Section 365 of the Bankruptcy Code and whether the word "or" should be construed in the disjunctive or as the conjunctive "and." *Id.* at 262 and fn.8. The Court found that, contrary to Sunterra's argument, reading Section 365(c) literally would not produce an absurd result as it would not render other provisions of Section 365 inoperative, nor would it create an irreconcilable conflict with itself or neighboring statutes. *Id.* at 267. The Court also found that a literal reading of the statute would be consistent with the general bankruptcy policy constructed by Congress. In making the latter finding, the Court explained that "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must

11

reject an assertion that such an application is absurd." *Id.* at 268 (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)).

V. Analysis of the Secondary Provision of the "Hanging Paragraph"

While myriad decisions have reviewed the provisions of the "hanging paragraph," (*see In re Trejos*, 352 B.R. 249, 253, fn.6 (Bankr. D. Nev. 2006)), only two reported decisions have considered the secondary provisions thereof relied upon by HSBC. In *In re Curtis*, 345 B.R. 756 (Bankr. D. Utah 2006), the court considered "whether the hanging paragraph found at the end of 11 U.S.C. § 1325(a) (hanging paragraph) requires a creditor to hold a purchase money security interest in 'any other thing of value' in order to prevent a debtor from cramming down a secured claim under § 506." *Id.* at 757-58.

The court concluded that the plain language of the "hanging paragraph" requires a creditor to have a purchase money security interest in either type of collateral mentioned in the "hanging paragraph" to negate the effect of Section 506.

> It is apparent from the plain language that the difference between the first and second part of the hanging paragraph lies in the type of collateral involved in the transaction and not in the nature of the creditor's security interest. It is equally apparent that a creditor must be secured by a purchase money security interest no matter which type of collateral is involved in the transaction. This is the only interpretation of the hanging paragraph that gives a reasonable and unambiguous meaning to the phrase "that debt" and to the hanging paragraph as a whole. Therefore, a creditor seeking to avoid being crammed down by virtue of the protections of the hanging paragraph must have a purchase money security interest in its collateral, whether a 910-day vehicle or "any other thing of value."

*Id.* at 760-61.

The court also concluded the plain application of the statutory provisions of the "hanging paragraph" would not produce an absurd result.

> Where the language of the statute is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  The only absurd result in this case would be to adopt the interpretation of the hanging paragraph that [the creditors] proffer.  Their interpretation would result in an expansive reading of the statute that would abolish the debtor's cram down powers under § 506 for every type of collateral purchased within one year prior to filing: a drastic change from prior law.  It is difficult to think that Congress was not aware of the extensive use of "title loans" and other high-interest, short-term, non-purchase money interests in today's sub-prime financing markets. Had Congress intended such an expansive alteration of the Bankruptcy Code, one would think that it would have made this abundantly clear in drafting the hanging paragraph. There is no evidence that Congress intended this result, and the only logical reading of the statute that gives meaning to the phrase "that debt" is to require that the creditor have a purchase money security interest in one of the two types of collateral listed in the hanging paragraph.

*Id.* at 761 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

The second decision considering the implications of the secondary provision of the "hanging paragraph" is *In re Parish*, Case Number 05-BK-15702-JAF, 2006 WL 1679710 (Bankr. M.D. Fla. Mar. 10, 2006) (slip opinion), where the court bifurcated the "hanging paragraph" into two applicable factual scenarios:

> [A]s a result of the Amendment, section 506 is now inapplicable in two scenarios.  First, if a creditor (1) has a purchase money security interest securing a debt, (2) the collateral for which consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, and (3) the debt was incurred within the 910-day period preceding the date of the filing of the petition, then section 506 is inapplicable and the entire amount of the creditor's claim is secured.  The second scenario where section

13

> 506 does not apply is where a creditor (1) has a purchase money security interest securing a debt, (2) the collateral for that debt consists of anything of value (other than a motor vehicle), and (3) the debt was incurred during the 1-year period preceding the filing. In each of the two aforementioned scenarios, a secured creditor's claim is fully secured irrespective of the value of the collateral securing the debt.

*Id.* at *1 (citing *In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006)).[8] Judge Funk explains his interpretation of this second scenario as follows:

> In the latter portion of the Amendment, Congress did not re-state the requirement that a creditor hold a purchase money security interest in order for section 506 not to apply to a debt secured by collateral, consisting of anything of value (other than a motor vehicle), incurred within 1-year of the filing date. However, the Court, in arriving at this interpretation, reads "that debt," located in the second to the last clause of the Amendment following the comma and the disjunction "or," to refer to "the debt" that is the subject of the claim secured by a purchase money security interest, stated in the beginning of the section. Therefore, it is necessary that a creditor hold a purchase money security interest in the collateral, purchased within 1-year of the petition, consisting of anything of value (other than motor vehicle) in order for section 506 not to apply to such claim.

*Id.* at *1 fn.1 (quoting 11 U.S.C. § 1325(a)(5)).

This Court agrees with the conclusions in *In re Curtis* and *In re Parish*. The provisions of the "hanging paragraph" create two protected categories of secured debt, each requiring that the creditor possess a purchase money security interest. Motor vehicles are excluded from the provisions of Section 506 of the Bankruptcy Code if the debt is incurred within the 910-day period prior to the bankruptcy filing. Collateral other than a motor

---

[8] *See* Part II., *supra*, for analysis regarding the secured status of the claim discussed in the "hanging paragraph."

vehicle is excluded if the debt is incurred within one year prior to the bankruptcy filing. Each instance, however, requires that the creditor possess a purchase money security interest in either the motor vehicle or other collateral. As Judge Funk has noted, the reference to "that debt" located in the concluding portions of the "hanging paragraph" logically must refer to "the debt" that is the subject of the claim secured by a purchase money security interest. *Id*. To construe the provisions otherwise would leave the term "that debt" with no reference in the paragraph.

Further, this Court cannot conclude that either of the enumerated exceptions to the Plain Meaning Rule apply in the instant case. The result reached herein, that a creditor must possess a purchase money security interest in collateral to be excluded from the application of Section 506, does not lead to a conflict with any neighboring or related statutes. Further, the resulting interpretation of the "hanging paragraph" using the Plain Meaning Rule, while it may produce an unpopular result among creditors that do not take a purchase money security interest in collateral, such does not rise to the level required to trigger the absurdity exception. *In re Sunterra*, 361 F.3d at 268 (citing *Maryland State Dep't of Educ. v. United States Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996)) (to trigger the absurdity exception, "the issue is not whether the result would be 'unreasonable,' or even 'quite unreasonable,' but whether the result would be *absurd*."). As Judge Boulden stated, there is no evidence that Congress intended for the "hanging paragraph" to expand the statute to encompass the use of non-purchase money loans. *In re Curtis*, 345 B.R. 756, 761 (Bankr. D. Utah 2006). Accordingly, the analysis here appropriately ends with the plain language

15

of the "hanging paragraph." *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)).

## VI. Conclusion

The provisions of the "hanging paragraph" of Section 1325 of the Bankruptcy Code are inapplicable to prevent the Debtors here from bifurcating the claim of HSBC as provided in the Plan as HSBC, by its stipulation, does not have a purchase money security interest in the Automobile. Accordingly, the Objection of HSBC to the Plan should be overruled, and the Debtors' Plan should be confirmed.

A separate order will issue.

The Clerk shall deliver copies of this Opinion to Richard G. Poinsett, Counsel for the Debtors; Sara A. John, Counsel for HSBC; and Frank J. Santoro, Chapter 13 Trustee.

**Entered this 22nd day of February, 2007.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge